AMERICAN LEASE PLAN, Appellant,

v.

BEN–KRO CORPORATION et al.,
Appellees.

No. 16228.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Jan. 31, 1974.

Rehearing Denied April 4, 1974.

Lapin, Totz & Mayer, Ronnie Horsley, Houston, for appellant.

Aaron Goldfarb, Morris L. Pepper, Houston, for appellees.

EVANS, Justice.

American Lease Plan, appellant, brought this suit against appellee, Ben-Kro Corporation, alleging that Ben-Kro had breached a lease agreement under which American Lease Plan was to supply and deliver certain office and printing equipment for a specified monthly rental of $81.49 over a term of 36 months. American Lease Plan alleged that Ben-Kro had failed to make required monthly payments in the aggregate amount of $325.96; that pursuant to the lease it had accelerated maturity of the unaccrued rentals for the unexpired term of the lease and was therefore entitled to recover the full amount of accrued and unaccrued rentals in the total amount of $2533.-02. It further alleged that appellee, John T. Bennett, had personally guaranteed the performance of the agreement and was also liable.

At the same time it filed its original petition, American Lease Plan filed an affidavit for writ of sequestration; gave bond and a writ of sequestration was issued three days later. Acting on the affidavit, the sheriff seized the leased equipment from Ben-Kro; subsequently American Lease Plan posted a replevy bond and took possession of the property. See Rule 708, Texas Rules of Civil Procedure. American Lease Plan then filed its first amended original petition alleging that it had repossessed the equipment through writ of sequestration and that after posting its replevy bond, it sold the property for $585.-00, leaving a balance due and owing of $1948.02, plus costs of taking possession, storing, repairing and selling in the alleged sum of $225.25. American Lease Plan therefore sought judgment against Ben-Kro for the sum of $2,173.27 together with interest, costs and attorney's fees. Ben-Kro answered, denying the account and asserting failure of consideration, breach of warranty, that the damages were in the nature of penalty and were unconscionable

and that attorney's fees should not be allowed. Both parties then filed motions for summary judgment. The trial court denied the motion of American Lease Plan and granted that of appellees, Ben-Kro and John Bennett.

The first page of the lease contract is set forth in full as follows:

**AMERICAN LEASE PLAN**
3003 W. ALABAMA / HOUSTON, TEXAS 770(

LEASE # _____ (TO BE FILLED IN BY LESSOR)

**– LESSOR –**

| LESSEE | SUPPLIER |
|---|---|
| NAME _____ | NAME _____ |
| ADDRESS _____ | 2801 San Jacinto |
| CITY _____ STATE _____ ZIP _____ | CITY Houston STATE Texas ZIP 77004 |
| PERSON TO CONTACT _____ PHONE NO. 433-5713 | SALESMAN _____ PHONE NO. 225-2091 |

**EQUIPMENT**

| QUANTITY | ITEM | MODEL NO. | SERIAL NO. | |
|---|---|---|---|---|
| | IF ADDITIONAL SPACE IS NEEDED – ATTACH SHEET FOR EACH PAGE OF THIS FORM AND MARK SAME, "SCHEDULE A" | | | |
| 1 | Scriptomatic Model 74 (1795.00) #74050 | | EQUIPMENT TOTAL | |
| 1 | MC-2 Machine Cabinet (6995) | | OTHER (SPECIFY) | |
| 16 | FT-1 file trays (192.00) | | SALES/USE TAX | |

| EQUIPMENT LOCATION IF OTHER THAN ABOVE ADDRESS OF LESSEE: Same | TOTAL COST TO LESSOR |
|---|---|

**SCHEDULE OF RENTAL PAYMENTS AND TERM OF LEASE**

| TERM OF LEASE | NO. OF RENT PAYMENTS | RENTALS PAYABLE | NUMBER AND AMOUNT OF RENT PAYMENTS (INCLUDES TAX) | ADVANCE RENTAL PAYMENT |
|---|---|---|---|---|
| 36 Months | 36 | ☒ MONTHLY ☐ QUARTERLY ☐ DECLINING ☐ | 36 PAYMENTS OF $ 81.49 EACH | AMOUNT EQUAL TO FINAL 3 RENT PAYMENT(S) @ $ 81.49 EACH |
| FIRST RENTAL PAYMENT DUE 3-1-70 (TO BE FILLED IN BY LESSOR) | | | | TOTAL $ 244.47 |

**TERMS AND CONDITIONS OF LEASE**

1. **LEASE:** Lessor leases to Lessee and Lessee rents from Lessor the Equipment listed above, or if separately scheduled, in the schedule annexed hereto marked "Schedule A" and made a part hereof. Said Equipment shall be located at the address shown above and will not be moved to a new location without written permission first given by Lessor. This lease shall commence upon date of acceptance by Lessor.

2. **TERMS AND RENTALS:** The term of this lease shall be as stated above. The first rental installment shall become due and payable on any date specified by Lessor after delivery and acceptance of Equipment by Lessee. Lessee promises to pay all specified rentals in advance on the date designated for payment by Lessor without demand. Said rentals shall be payable at the Home Office of the Lessor in Houston, Harris County, Texas.

3. **DEPOSIT:** Lessor acknowledges receipt of "Advance Rentals Deposit" as shown above. This amount shall be held by Lessor as security for the performance by the Lessee of all of the Terms and Conditions of this Lease. If Lessee is not in default hereunder, or under any other lease between the parties hereto, said deposit shall be applied toward payment of rent at the end of the term of this lease.

4. **THIS INSTRUMENT THE ENTIRE AGREEMENT:** This instrument constitutes the entire agreement between Lessor and Lessee. Whenever the context of this Lease requires, the masculine gender includes the feminine or neuter, and the singular number includes the plural; and whenever the word Lessor is used herein, it shall include all assignees of Lessor. If there be more than one Lessee named in this Lease the liability of each shall be joint and several. No representation or statement made by any representative of the Lessor or the Supplier not stated herein shall be binding.

5. **LEASE IS IRREVOCABLE:** This Lease is irrevocable for the full initial term and Lessee's obligation to pay the aggregate rent for this term shall not abate by reason of loss of or damage to the Equipment or termination of Lessee's possession or for any other reason. This instrument is a lease agreement and not a contract of sale. Said equipment shall always be owned by and all titles thereto shall always be in the name of Lessor.

**THIS LEASE IS SUBJECT TO THE TERMS AND CONDITIONS PRINTED ABOVE AND ON THE REVERSE SIDE WHICH ARE MADE A PART HEREOF AND WHICH LESSEE ACKNOWLEDGES THAT HE HAS READ.**

THIS IS A NON-CANCELLABLE LEASE FOR THE TERM SHOWN.

ACCEPTED ON 1/16/70
AMERICAN LEASE PLAN
BY _____
AUTHORIZED SIGNATURE

LESSEE _____
The undersigned affirms that he is a duly authorized corporate officer, partner, or proprietor of the above-named Lessor.
BY X _____
TITLE _____ DATED 1/14/70

LEASE COPY    3    ORIGINAL SIGNATURE REQUIRED

On the reverse side of this form the "Terms and Conditions" of the contract are continued and in very small print there appear Twenty separate paragraphs, the most pertinent here being the following:

"16. Default: In the event Lessee shall default in the payment of any rent, additional rent, or any other sums due hereunder for a period of ten (10) days, or in the event of any default or breach of the terms and conditions of this lease, or any other lease between the parties hereto, or if any execution or other writ or process shall be issued in any action or proceeding against the Lessee whereby the said Equipment may be taken or distrained, or if a proceeding in bankruptcy shall be instituted by or against the Lessee or its property; or if the Lessee shall enter into any agreement or composition with its creditors, breach any of the terms of any loan or credit agreement, or default thereunder, or if the condition of the Lessee's affairs shall so change as to, in the Lessor's opinion, impair the Lessor's security or increase the credit risk involved, then and in that event the Lessor shall have the right but shall not be obligated, to exercise any one or more of the following remedies: (a) to sue for and recover all rents and other amounts then due or thereafter accruing under this lease; (b) to take possession of any or all of the equipment, wherever it may be located, without demand or notice, without any court order or other process of law, and without incurring any liability to lessee for any damages occasioned by such taking of possession; (c) to sell any or all of the equipment at public or private sale for cash or on credit and to recover from lessee all costs of taking possession, storing, repairing and selling the equipment, an amount equal to ten percent (10%) of the actual cost to lessor of the equipment sold, and the unpaid balance of the total rent for the initial term of this lease attributable to the equipment sold, less the net proceeds of such sale; (d) to terminate this lease as to any or all items of equipment; (e) in the event lessor elects to terminate this lease as to any or all items of equipment, to recover from lessee as to each item subject to said termination the worth at the time of such termination, of the excess, if any, of the amount of rent reserved herein for said item for the balance of the term hereof over the then reasonable rental value of said item for the same period of time; (f) to pursue any other remedy now or hereafter existing at law or in equity.

"Notwithstanding any such action that lessor may take, including taking possession of any or all of the equipment, lessee shall remain liable for the full performance of all its obligations hereunder, provided, however, that if lessor in writing terminates this lease, as to any item of equipment, lessee shall not be liable for rent in respect of such item accruing after the date of such termination.

"In addition to the foregoing, lessee shall pay lessor all costs and expenses, including reasonable attorney's fees, incurred by lessor in exercising any of its rights or remedies hereunder.

"Should Lessee fail to pay any part of the rent herein reserved or any other sum required to be paid to Lessor by Lessee within ten (10) days after the due date thereof, Lessee shall pay unto Lessor a late charge of ten percent (10%) of the payment due or One Dollar ($1.00), whichever the greater, for each month or part thereof for which said rent or other sum shall be delinquent."

At the bottom of the second page there appears the following guaranty provision:

(Signature) X (s) John T. Bennett
An Individual"

"Undersigned guarantees performance of above lease by Lessee and payment of all sums due thereunder in event of de-

fault, hereby waiving any modification, amendment or extension and notice thereof.

The agreement of the lessee, Ben-Kro, with respect to payment of rentals is contained in paragraph 2 under designation "Terms and Conditions of Lease" and in the "Schedule of Rental Payments and Term of Lease" on the face of the lease contract. As we construe these provisions, the lessee is required to make monthly rental payments of $81.49 each, beginning March 1, 1970, with a payment being due on the first day of each succeeding calendar month during the 36 month term of the lease. These provisions do not contain an agreement or promise of the lessee to pay, as rental, any specific sum or consideration equivalent to the total amount of the lease rental payments; the lessee is merely obligated to make the monthly payments in the stipulated amounts as and when they come due during the term of the lease.

A covenant to pay rent periodically during the term of the lease creates no obligation on the part of the lessee until the time for payment arrives. 49 Am.Jur. 2d, Sec. 515, p. 495. Rives v. James, 3 S. W.2d 932 (Tex.Civ.App.—San Antonio 1929, writ dismissed). See also Williams v. Houston Cornice Works, 46 Tex.Civ. App. 70, 101 S.W. 839 (1907, n. w. h.); Davidson v. Hirsh, 45 Tex.Civ.App. 631, 101 S.W. 269 (1907, n. w. h.). A different situation is presented where the lessee agrees to pay a specific gross sum, payable in installments over the term of the lease. Hart v. Wynne, 40 S.W. 848 (Tex.Civ. App.1897, writ ref.).

There are provisions in the lease to the effect that the lease is irrevocable; that the lessee's obligation to pay the aggregate rent for the term will continue notwithstanding loss or damage to the equipment, termination of its possession "or for any other reason," and that notwithstanding any action the lessor may take on default, the lessee will remain liable for the full performance of its obliga-

tions. However these provisions, as we construe them, are not inconsistent with the provisions referred to above which obligate the lessee to pay the specified monthly rentals as and when they accrue during the term of the lease; in the absence of express provision, that obligation may not be extended so as to entitle the lessor to unearned and unaccrued rentals. Rohrt v. Kelley Manufacturing Company, 162 Tex. 534, 349 S.W.2d 95 (1961); Texas Western Financial Corporation v. Ideal Builders Hardware Company, 481 S.W.2d 919 (Tex.Civ.App.—Houston, 14th, 1974, writ ref. n. r. e.). The lease contract is on a printed form bearing the name of the lessor, American Lease Plan, and its terms reflect that it was principally intended to benefit the lessor. Any doubt as to the proper construction to be given the lease provisions must be resolved against the lessor. Sirtex Oil Industries, Inc. v. Erigan, 403 S.W.2d 784 (Tex.Sup.1965). We believe the construction indicated above tends to harmonize the provisions discussed and avoids a harsh and unjust result. Walling v. Christie & Hobby, Inc., 54 S.W.2d 186 (Tex.Civ.App.—Galveston 1932, N.W.H.).

The summary judgment proof shows that the lessee Ben-Kro made the first two rental payments due under the lease for the months of March and April, 1970 and that it also made the advance rental deposit in the equivalent of three months' rental. This suit was filed on August 27, 1970 and American Lease Plan repossessed the leased equipment through process of sequestration on September 1, 1970. At the time the leased property was repossessed by American Lease Plan, there was apparently rental due and unpaid for the four months of May, June, July and August of 1970 and American Lease Plan held in its hands the security deposit equivalent to three months' rental payment.

In the default provisions (paragraph 16) of the lease, the lessor is given extensive remedies in the event of the lessee's default in payment of rentals. The lease provides that the lessor may sue for all

rentals "then due or thereafter accruing"; take possession of the property without demand or notice and without court order or other process; sell the equipment at public or private sale for cash or credit; terminate the lease, and/or to pursue any other remedy at law or in equity. While these remedies are stated as being both alternative and cumulative, they are in certain respects clearly inconsistent.

■ Under the provisions of the lease in question, American Lease Plan, on default of its lessee, could either treat the lease as continuing in effect and sue on the lease for the monthly rental payments as and when they fell due; or it could sue for damages for anticipatory breach, its measure being the difference between the present value of the rentals contracted for in the lease and the reasonable cash market value of the lease for its unexpired term. Walter E. Heller & Company v. Allen, 412 S.W.2d 712 (Tex.Civ.App.—Corpus Christi 1967, writ ref. n. r. e.). See also 13 Baylor L.Rev. 374. In the latter instance the lessor had the right to take possession of the leased property. It did not, however, have the right to retake possession of the property and also recover the full amount of unaccrued and unearned rentals for the unexpired term of the lease. Walling v. Christie & Hobby, Inc. supra; 8 C.J.S. Bailments Sec. 44, p. 494; Stewart v. Basey, 241 S.W.2d 353 (Tex.Civ.App.—Austin 1951, aff'd 150 Tex. 666, 245 S.W.2d 484 (1952)).

■ American Lease Plan's petition recites that the lease contract provides that if the lessee fails to make the payments when due the lessor "may declare the entire balance then immediately due and payable." We fail to find any such provision in the lease agreement. We are further of the opinion that the pleading and proof of American Lease Plan would not sustain a recovery for unaccrued rental payments even had the lease agreement purported to give the lessor a right to accelerate maturity. In certain instances such acceleration provisions have been upheld as in Blakeway v. National Credit Corp., 439 S.W.2d 155 (Tex.Civ.App.—Austin 1969, writ ref. n. r. e.); however, in circumstances such as here present, such provisions have generally been treated as a penalty, unenforceable both as to the lessee and the lessee's guarantors. Walter E. Heller & Company v. Allen, supra; Stewart v. Basey, 150 Tex. 666, 245 S.W.2d 484 (1952).

■ In our opinion, American Lease Plan's repossession of the leased equipment and its disposition of the equipment by sale effectively terminated the lessee's continuing obligation to pay rental. Barret v. Heartfield, 140 S.W.2d 942 (Tex.Civ.App.—Beaumont 1940, writ ref.). To compel a lessee, ousted from possession, to pay full value for use of property which it no longer has the right and opportunity to use and enjoy, permits the lessor a measure of recovery far in excess of "just compensation." Stewart v. Basey, 150 Tex. 666, 245 S.W.2d 484 (1952); see also 5 Corbin, Contracts, Sec. 1065, p. 378. This is obviously unfair, whether the lease be considered a bailment or a conventional lessor-lessee relationship. Texas Western Financial Corp. v. Ideal Builders Hardware Company, supra, 481 S.W.2d at page 923.

■ We further hold that when American Lease Plan repossessed the leased equipment under the sequestration statutes it elected a remedy which was inconsistent with non-judicial repossession and sale under the contractual terms of the lease. While the lease authorized American Lease Plan to take possession of the equipment, without court order or other process of law, this remedy co-existed with but was inconsistent to the legal remedy afforded appellant under the sequestration statutes. Moszkowicz v. A. B. Lewis Company, 268 S.W.2d 548 (Tex.Civ.App.—Waco 1954, writ ref'd n. r. e.); Norris v. Wilkens, 3 S.W. 126 (Tex.Civ.App.—Dallas 1927, n. w. h.). American Lease Plan elected to proceed with its judicial remedy pursuant to the sequestration statutes and having

**944**

elected such remedy, cannot assert that its action in effecting repossession and sale was done pursuant to the provisions of the lease. Moszkowicz v. A. B. Lewis Company, supra; see also Kingsbery v. Phillips Petroleum Company, 315 S.W.2d 561 (writ ref. n. r. e.); Fleming v. Lon Morris College, 85 S.W.2d 276 (Tex.Civ.App.—El Paso 1935, writ ref.). Accordingly, the sale and disposition of the leased property must be considered a legal eviction of the lessee and a termination of the lease. Barret v. Heartfield, supra.

In view of our holdings above, we do not consider the contentions set forth in appellee's brief as to the constitutionality of the sequestration procedures under Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Sniadach v. Family Finance Corporation of Bayview, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) and the recent decision of the 14th Court of Civil Appeals in Southwestern Warehouse Corporation v. Wee Tote, Inc., 1974, 504 S.W.2d 592.

The summary judgment proof established that the monthly rental payments for the months May, June, July and August had accrued at the time possession was retaken by American Lease Plan and that the lessee had made an advance rental deposit equivalent to three months' rental which would be applicable as an offset against such accrued rent.

The summary judgment proof also shows material issues of fact as to appellees' defenses of breach of warranty and failure of consideration. The affidavits of John T. Bennett and of Jo Ann Crow, Secretary-Treasurer of Ben-Kro, state that the leased equipment failed from the beginning to work properly; that it mutilated the cards and envelopes which it was supposed to print; that American Lease Plan sent repairmen to work on the machine but that they were unable to repair it and that appellees were told the machine would have to be taken out to be repaired. The affidavits further state that American

Lease Plan then removed the machine and replaced it with a used demonstrator which did not work properly; that that machine was likewise serviced by the lessor's representatives but without success and that the equipment which was actually sequestered was the used demonstrator and not the machine originally leased. We are of the opinion that these sworn statements raise material fact issues pertinent to appellees' defenses.

We reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.