**W W LEASING UNLIMITED,**
Plaintiff-Appellee,

v.

**TOROK EXPLORATION, MINING AND CONSTRUCTION CO., INC., and John Torok, Defendants-Appellants.**

No. 76–2708.

United States Court of Appeals,
Ninth Circuit.

Feb. 1, 1978.

Rehearing Denied March 8, 1978.

E. A. Hollingsworth (argued), Reno, Nev., for defendants-appellants.

Richard B. Weinstein (argued), San Francisco, Cal., for plaintiff-appellee.

Before CHOY and GOODWIN, Circuit Judges, and HOFFMAN,* District Judge.

CHOY, Circuit Judge:

The sole issue in this appeal is the appropriate measure of damages for breach of contract. We affirm in part and reverse and remand in part.

Torok Exploration, Mining and Construction Co. (Torok) ordered a front-end loader from Conexco, Inc., d.b.a. Sierra Machinery & Industrial (Sierra). When financing proved unavailable, Sierra agreed to rent the loader to Torok for six months with an option to purchase. On April 17, 1973, Torok took possession of the loader, which cost $57,165.00. Eight months later Torok was still unable to finance the purchase, and Sierra moved to terminate the arrangement. Torok entered into an agreement with W W Leasing Unlimited (W W) whereby W W purchased the loader from Sierra and leased it to Torok. A simultaneously executed agreement provided for Sierra to repurchase from W W in the event of default by Torok. To finance the purchase W W borrowed $42,079.89—arrived at by subtracting $15,350.15 that Torok had paid under the rental agreement from the original purchase price—from Wells Fargo Bank, assigning the lease to the bank as security.

Torok defaulted after five months and W W repurchased the lease from the bank for $39,975.90, the amount owing on the loan. Sierra repurchased from W W for the same amount pursuant to their agreement. W W brought an action against Torok in federal court based on diversity jurisdiction claiming damages for default.

The default clause in the lease provided:

Any failure by lessee to perform any other provisions hereof.

In the event of any default, lessor, at its election may (i) without canceling or terminating this Agreement declare the balance of rental for the remainder of the term hereof immediately due and payable; (ii) terminate the Agreement and the lessee's rights therein, retaining all rents and other payments theretofore made by lessee; (iii) relet the leased equipment for the account of lessee, in which event lessee shall pay lessor monthly any deficiency suffered by lessor plus all reasonable costs and expenses incurred by lessor; (iv) sell the equipment and credit the account of lessee with the net proceeds of the sale after deducting all costs of sale. Lessee shall pay forthwith to lessor any remaining deficiency plus reasonable attorneys' fees, other professional fees, all collection expenses and costs of suit incurred by lessor.

The foregoing remedies are cumulative and may be exercised concurrently, separately, and at one time or from time to time. In addition, lessor shall have all other remedies provided by law in the event of a default including the remedy provided by California Civil Code Section 3308. Lessee will pay all costs and expense, including attorneys' fees incurred in the enforcement of any obligation of lessee or right of lessor, and all rental or other sums owed by lessee to lessor shall bear interest at the maximum legal rate from their due date until paid. In the event of default, lessee, upon request of

---

* Honorable Walter E. Hoffman, Sr., United States District Judge for the Eastern District of Virginia, sitting by designation.

lessor, shall promptly deliver the leased equipment to the place designated by lessor, and failing same, lessor may take possession of the leased equipment wherever the same may be found, with or without process of law and for that purpose, lessee hereby authorizes lessor to lawfully enter any premises as agent of lessee to accomplish such repossession.

The district court entered summary judgment for W W, awarding "actual" damages flowing from Torok's breach based on the following computation: (1) the lease provided for 60 monthly payments of $1,050.00 and had a balance remaining of $57,860.00; (2) This balance was discounted to present value at a rate of 7.11% using a formula reflecting a stream of anticipated periodic payments; (3) A late charge of $210.40 was added; (4) The resale price of $39,975.90 was subtracted; (5) A $3.00 fee incurred as a cost of repossession was added. The judgment entered ordered Torok to pay W W $9,492.42 with interest at 7% in damages, plus costs and attorneys' fees of $4,119.00.

■ Torok first contends that its arrangement with W W constituted a conditional sale rather than a lease. We find the distinction irrelevant in this case, because even if we determined the existence of a conditional sale agreement governed by the California Commercial Code, damages under the resale-and-deficiency clause would be the same. *See Puritan Leasing Co. v. August,* 16 Cal.3d 451, 461–62, 128 Cal.Rptr. 175, 181–182, 546 P.2d 679, 685–86 (1976).

■ Further, Torok alleges several errors in damages computation. It claims that failure to deduct "savings" to the lessor for overhead upon breach was improper. However, overhead expenses (insurance, maintenance and repairs) were borne by Torok, and since any savings to W W for servicing the lease were negligible, we find no error in the trial court's ruling.

■ Torok also claims the interest rate of 7.11% was improper in the current economic climate. Again we disagree. It appears that the district court's determination of the proper interest rate resulted from careful research and analysis and we find no abuse of discretion in this regard. *See Distillers Distributing Corp. v. J. C. Millett Co.,* 310 F.2d 162, 165 (9th Cir. 1962).

■ Two questions remain. Torok claims that interest payments to Wells Fargo that no longer had to be met once W W repurchased the lease should be deducted as savings. We agree. To arrive at the appropriate savings, the interest payable with each monthly payment for the life of the loan should have been computed and deducted prior to discounting the balance remaining on the lease.

■ Lastly, we consider the proper resale amount that should have been deducted from the discounted balance owed W W under the resale-and-deficiency clause of the contract. Settled legal principles require a wronged party to mitigate damages to the degree possible. "If the plaintiff by taking one line of conduct may secure such advantages as the contract entitled him to at less expense to the defendant than if another course is pursued, the plaintiff should be allowed only damages based on the former course." 11 *Williston on Contracts* § 1397 at 519 (3d ed. W. Jaeger 1968).

■ While W W had an agreement with Sierra specifying the repurchase price, it was exercisable at W W's option, and nothing prevented WW from selling to another party at a higher price. It may be that $39,975.90 represented the fair market value; however, no evidence in the record so indicates. We therefore remand for determination of proper deductions of savings in the form of interest and for determination of fair market value which should include consideration of all costs of resale to a party other than Sierra. The court may wish to reconsider its award of attorneys' fees in the light of its decision on remand. The parties shall bear their own costs and attorneys' fees on this appeal.

AFFIRMED in part; REVERSED and REMANDED in part.