SOUTHWEST PARK OUTPATIENT SURGERY, LTD., et al., Appellants,

v.

CHANDLER LEASING DIVISION, Pepsico Leasing Corporation, Appellee.

No. 17163.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Sept. 7, 1978.

Wood, Lucksinger & Epstein, Bill R. Bludworth, Houston, for appellants.

Fulbright & Jaworski, Jeffrey R. Parsons, Houston, for appellee.

EVANS, Justice.

This is an appeal from a summary judgment awarding a lessor damages for breach of a lease equipment.

The lease in question is dated September 16, 1974, and was executed by Chandler Leasing Division as lessor and by Southwest Park Outpatient Surgery, Ltd., as lessee. R. W. Dwyer, Nadine Kay Dwyer, Thomas C. Rooney, and Genevieve Rooney each executed agreements personally guaranteeing the lessee's obligation under the lease.

Chandler Leasing Division subsequently brought this action against the lessee and the four guarantors, alleging default in payments of monthly rentals and seeking damages, repossession of the leased equipment and attorney's fees. The defendants answered and also filed a cross-action against the supplier of the equipment alleging that the equipment was defective and not fit for the purposes intended.

The trial court granted a partial summary judgment awarding the plaintiff possession of the leased equipment and severed that claim from the main cause. A final judgment was then entered in the severed cause, and an appeal was taken from that judgment to this court. In a separate opinion this date filed, this court has affirmed the trial court's summary judgment awarding possession of the leased equipment to the plaintiff.

The trial court also entered a partial summary judgment awarding the plaintiff the sum of $393,346.33 as "the entire amount of liquidated lease payments presently due and remaining to be paid over the balance of the lease term", and ordered that claim severed from the main cause. A final judgment was then entered in the severed action awarding said sum to the plaintiff, the judgment reciting that it was without prejudice to the claims remaining in the principal case. No objection has been made to the manner in which the claims were severed in the trial court and that is not an issue on this appeal.

In the case at bar the defendants contend that the trial court's judgment should be reversed because the affidavit filed in support of the plaintiff's motion for judgment is fatally defective. This contention will be overruled for reasons discussed in this court's opinion of even date on the appeal from the summary judgment awarding the plaintiff possession of the leased equipment.

The defendants also contend that the summary judgment proof established genuine issues of material fact with respect to their affirmative defenses of failure of consideration, usury and penalty. The plaintiff contends that these issues were not raised by the pleading or established by the proof.

In their answers the defendants alleged that the consideration had failed because the equipment was defective when delivered and was not fit for the purposes intended. The defendants also asserted this defense in their response to the plaintiff's motion for summary judgment. The supporting affidavit of the guarantor Dwyer alleges that the lessee did not receive all of the equipment listed in the lease rental schedule and that the equipment never functioned as required and was not fit for the purposes intended. The affirmative defense of failure of consideration was sufficiently alleged for the purposes of the summary judgment proceeding. *Womack v. Allstate Ins. Co.,* 156 Tex. 467, 296 S.W.2d 233 (1957); *DeBord v. Muller,* 446 S.W.2d 299 (Tex.1969). The summary judgment proof does not, however, raise a fact issue on this affirmative defense in view of the parties' contractual agreement. The lease contract contains an itemized list of the leased equipment and the lessee signed a

certificate of inspection and acceptance acknowledging receipt of the equipment in good working order, repair, and condition. The lease also contains a lessor's express disclaimer of any warranty or representation as to title, condition, design, quality or capacity, or as to the workmanship or fitness of the equipment for any particular purpose. The lease further provides that in no event should any defect or any unfitness of the equipment relieve the lessee of its obligation to pay rental as required by the lease. Thus, on the basis of the record before the court at the time of the summary judgment proceeding, no genuine issue of material fact was raised with respect to the alleged defense of failure of consideration.

■ The affirmative defense of usury also was alleged sufficiently by the defendants' responses to the plaintiff's motion for summary judgment and by the sworn allegations contained in the supporting affidavit of the guarantor Dwyer. In his affidavit, Dwyer alleged that the lease agreement was a lease in form only and that the substance of the parties' transaction was that the plaintiff would make a loan to the defendants at a higher rate of interest than allowed by law.

In determining whether the summary judgment proof established the affirmative defense of usury, it is first necessary to determine whether the lease agreement is a lease or a conditional sales contract. Although the lease grants an option to the lessee to purchase the leased property at the end of the lease term, it does not obligate the lessee to purchase the equipment nor does it provide that the paid monthly installments will be applied against the sales price. The terms of the contract reflect that it was not a conditional sales agreement, but rather was a bailment with an option granted to. the lessee to purchase the equipment at the expiration of the term at the then fair market value of the property. *Securities Life Ins. Co. v. Executive Car Leasing Co.,* 433 S.W.2d 915 (Tex.Civ. App.—Texarkana 1968, writ ref'd n. r. e.).

■ Moreover, even if the contract should be construed as a conditional sales agreement, the summary judgment proof did not establish a genuine issue of fact with respect to the defendant's affirmative defense of usury. The lease agreement provided that the laws of the State of Massachusetts would apply to the construction of the lease, and the plaintiff filed a motion asking that the court take judicial notice of the law of that state which permitted a rate of interest up to 20% interest per annum. The trial court's judgment may be sustained upon the basis of an implied finding that the law of Massachusetts governed the transaction. *Securities Investment Co. v. Finance Acceptance Corp.,* 474 S.W.2d 261 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n. r. e.). The lease agreement also contains a provision for the recovery of 12% late charges on overdue payments, but this provision does not involve a "lending transaction", and its inclusion in the contract does not violate the usury statutes. *Maloney v. Andrews,* 483 S.W.2d 703 (Tex. Civ.App.—Eastland 1972, writ ref'd n. r. e.).

The defendants' affirmative defense of penalty was alleged only in their unsworn response to the plaintiff's motion for summary judgment, and no supporting summary judgment proof was offered in support of this defense. However, the question of whether the provisions of the lease agreement provide for a penalty may be determined entirely from the face of the contract. *Niles v. Harris County Fresh Water Dist. No. 1–A,* 339 S.W.2d 562 (Tex.Civ.App. —Waco 1960, writ ref'd).

The lease agreement sets forth nine separate "events of default" and provides that in the event of any such default, the lessor, at its option, may pursue various remedies which "shall not be deemed to be exclusive, but shall be cumulative and shall be in addition to all other remedies". The lease provides that the lessor may in such event "do any one or more of the following:

(1) declare, by written notice to Lessee, the entire amount of rent remaining to be paid over the balance of the lease term of all Equipment then leased hereunder,

computed from the date of the occurrence of any such Event of Default (and discounted to its then present value at the rate of six percent (6%) per annum) to be immediately due and payable, whereupon the payment of such amount shall be so accelerated and such amount shall be payable by Lessee forthwith;

(2) proceed by appropriate court action or actions at law or in equity or in bankruptcy to enforce performance by Lessee of the covenants and terms of this Lease and/or to recover damages for the breach thereof;

(3) terminate this Lease upon written notice to Lessee;

(4) whether or not this Lease be so terminated, and without notice to Lessee, repossess the Equipment wherever found, with or without legal process, and for this purpose Lessor and/or its agent may enter upon any premises of or under the control or jurisdiction of Lessee or any agent of Lessee without liability for suit, action or other proceeding by Lessee (any damages occasioned by such repossession being hereby expressly waived by Lessee) and remove the Equipment therefrom, LESSEE HEREBY CONSENTING TO SUCH REPOSSESSION AND WAIVING ANY RIGHT TO NOTICE OR A HEARING OF ANY KIND PRIOR TO SUCH REPOSSESSION.

With respect to any Equipment returned to Lessor, or repossessed by Lessor pursuant to subparagraph (4) above, Lessor may hold or use such Equipment for any purpose whatsoever, or may sell same at a private or public, cash or credit sale, or may re-lease same for such term and upon such rental as shall be solely determined by Lessor. In the event of the sale or re-leasing by Lessor of such Equipment Lessee shall be liable for, and Lessor may forthwith recover from Lessee as liquidated damages for breach of this Lease, and not as a penalty, an amount equal to the deficiency, if any, between (X) the Stipulated Loss Value of such Equipment as of the last day of the month next preceding the month in which such Event of Default has occurred, and

(Y) the proceeds of any sale or re-leasing of such Equipment, after first deducting from such proceeds all costs and expenses of repossession, storage, repairs, reconditioning, sale, re-leasing, reasonable attorneys' fees and collection fees with respect to such Equipment. In the event of any such re-leasing the costs and expenses referred to in the preceding sentence shall be deducted from the total amount of the rent payments which Lessor contracts for the use of such Equipment, and the remaining amount, after such deduction, shall be discounted to its then present value at a rate of six percent (6%) per annum and such remaining amount shall constitute the 'proceeds' of such re-leasing for purposes of computing the aforesaid deficiency."

The lease further provides that in addition to the foregoing, the lessee shall be liable for all unpaid rent and other unpaid sums accruing prior to the date of the occurrence of default, for all costs and expenses incurred in the enforcement of the lessor's rights and remedies, including attorney's fees and collection fees, and for all sums payable under the indemnification provisions of the lease. The lease also provides that if a court of competent jurisdiction should determine that any provision of the default or remedy section of the lease is invalid or unenforceable such would not prohibit the lessor from bringing an action for damages resulting from the lessee's breach of the lease.

■ The universal rule for measuring damages for breach of contract is just compensation for the loss or damages actually sustained, and a contractual stipulation which violates the principles underlying this rule will not be enforced. *Stewart v. Basey,* 150 Tex. 666, 245 S.W.2d 484 (1952). In the case at bar, the lease contract does not require that the proceeds of a sale or releasing of the equipment be applied to the lessee's account, and the contract thus permits the lessor to recover the full value of the use of the leased equipment after it has been returned to the lessor's possession.

This court has held that such a measure of recovery far exceeds just compensation and that a lease provision to such effect is unenforceable as a penalty. *American Lease Plan v. Ben-Kro Corp.,* 508 S.W.2d 937 (Tex. Civ.App.—Houston [1st Dist.] 1974, writ ref'd n. r. e.); *United States Leasing Corp. v. Smith,* 555 S.W.2d 766 (Tex.Civ.App.— Tyler 1977, writ ref'd n. r. e.).

Since the trial court's judgment must be reversed and the cause remanded for further proceedings, it is unnecessary to discuss the defendant's contentions with respect to the sufficiency of the summary judgment proof to support the plaintiff's recovery of damages.

The judgment of the trial court is reversed and the cause is remanded.